So we're first going to hear United States of America v. J. Elhage. That's 22763. And that's Ms. Shevitz. Good morning, Your Honors. Okay. You've reserved two minutes for your rebuttal. Yes, I have. I'm Vivian Shevitz, and I was appointed to represent J. Elhage on this appeal. Mr. Elhage was convicted of viewing child pornography and related matters, and he asks, he believes that the Constitution does not allow criminal prosecutions of child pornography cases because the Constitution limits the federal government in its criminal powers. The Commerce Clause was meant to regulate the states and how the states either hurt or don't hurt each other with commerce. But the Commerce Clause does not, in appellant's opinion, allow prosecution for anything other than the enumerated types of crimes in the Constitution. So if I may, just to be clear, the necessary conclusion of your client's argument, and I appreciate that you're using the word client, argument is that we need to topple most of the criminal justice system because every person who was ever convicted of a crime that wasn't counterfeiting, treason, or committed on high seas is constitutionally improper? Well, probably offenses like connected to the post office or other offenses which pertains to an area that the Congress does have enumerated power in the Constitution. Like the Commerce Clause? Well, the Commerce Clause, it says it has power under the Commerce Clause, but not to define crimes. Just like the power to run a mail system in the post office? What I'm saying is that although the Commerce Clause gives Congress power over commerce, it does not specifically talk about criminal prosecution. Now, the post office is a different thing. Does it talk about criminal prosecution? It does not specifically, but one could see that if the Congress has power to create a post office, then Congress theoretically has the power to make crimes if somebody was trying to do something to the post office or the mail carrying. That is an enumerated matter in the Constitution. The Commerce Clause, however, regulates too many things to come within the limited power of the federal government. The founders, it's the appellant's position that the founders did not intend to give the federal government power to punish as a component of its power under the Commerce Clause. Because under the Commerce Clause, Congress can usurp all the federal, all the police powers of the states and make them more serious like it does in this area of child pornography. So can you tell me, I mean I know you reject that, or you reject the fact that Harris makes this immaterial, but can you explain to me how Harris doesn't find that, at least implicitly, that Congress was authorized by the Commerce Clause to enact the specific crimes of conviction? Well, implicitly, somewhat. I will concede that, but Harris talked about whether the activity in and of itself has a connection to interstate commerce. Whether the activity being prosecuted has a remote connection or a direct connection. In that case, in Harris, the court held that the activity itself can be regulated by commerce because it's finding that conglomerate activity has an effect on commerce, so does everything else. But to be clear, you're not arguing that your clients' offenses weren't acts engaged in commerce. You're saying that the statute exceeds congressional authority. Isn't that correct? That's correct. Pursuant to the Commerce Clause. This particular activity is so remote, and in fact, we get to the, what I call almost silliness sometimes, of saying that the part to the computer was made in Thailand, or something of that nature. And that's supposed to be the peg that brings the activity within interstate commerce. Okay, but you understand that as a panel, we can't do anything about Harris. Is that correct? I agree with that. Is this the one stop on the motion because you're going to move for en banc and then to cert, or what happens after a year? Because you would concede that there's nothing that we can do as a panel about the precedent of Harris. Is that correct? I agree with that, but I don't think Harris precludes this ruling, that Harris did not consider whether there is criminal jurisdiction under the Constitution for cases that fall under the Commerce Clause. How about Comstock? So Comstock says, I'm quoting, I think not, because then it also goes on to talk about how there shouldn't be punishment if punishment isn't authorized. And my client's position is, and he knows it's an uphill position, is that Congress did not intend to criminalize any of this because of the enumerated offenses in the Constitution. Why is that? Why did the Constitution enumerate prison, counterfeiting, and piracies on the high seas? It's because the state can't define them, piracies on the high seas. If I may, I'm just, I'm getting a little bit confused about your argument. I thought we started off by saying that you would hold that Congress's authority to regulate is not continence by the Commerce Clause. Now what I hear you saying is that our cases that say that it is are something you should distinguish, right, because it's not just Comstock. We also have Ramos. You also conceded that Harris, at least implicitly, assumes that. Are you making two separate arguments or are you just making the extent of congressional authority argument? I'm making the extent of congressional authority. Okay, so you're not taking issue with our cases that have already decided them as in terms of distinguishing. You're saying that they're incorrect and need to be revisited. Is that correct? I'm saying that neither Harris nor Ramos, because that was my case. I litigated that case on appeal many years ago. And in neither of those cases was the issue raised that there is no power to designate Commerce Clause related offenses as crimes. My client says the Congress can regulate them, can impose civil penalties, can impose rules. But when it comes to prosecution, as happened here, the state started the prosecution against him. The state has laws against child pornography, and he believes that although the federal government can regulate for sure, it cannot, well known, prosecute criminally for offenses just premised on the Commerce Clause. Okay, thank you. I'm asking you to upend everything, as the courts did in the Northern Pipeline case, in the bankruptcy context, and in Dobbs, and in a number of cases now where we are reevaluating what the federal Constitution actually provides. Okay, thank you. We'll hear from you. You've got time at the end. You can reserve two minutes. Thank you. Okay, and Mr. Silver, I will say we all thought you were going to be in person. So it was a bit disruptive to the court, so if you could just be mindful of that in the future. Yes, Your Honor. I did receive a note. Can you guys hear me? No. No, we're actually having trouble. This is one of the reasons why it's preferable to be in person. We actually, you're muffled, and we're unable to hear you. Will you try again, please? Yes, Your Honor. Can you hear me now? No. It's better, but not ideal. Why don't we try, and we'll stop you if we're struggling. Thank you, Your Honor. I view the appellant's argument as leading to the worst case. I'm sorry, we're struggling. Is there something you can do on your end? Okay, now we can't hear you at all. Do you want to maybe use a mic that's closer? I will try first, Your Honor. Try your headphones. Just speak into the microphone. I don't think that's helping. No, that didn't help either. Dial in. Yeah, do you want to? I think we're going to need to have him dial in. Dial in. Yes, okay. Do you mind stopping the time, please? Yes. Thank you. Mr. Silver, can you dial in to the Zoom form, phone number that is there? Okay. Are you able to hear me now? Yes. But now you've got to mute your computer, because now we're getting a terrible audio. Can you help us with the video? Is that better, Your Honor? Yes. Thank you. Thank you for your patience. I view the appellant's argument as one for preservation, because the law is clear from the Supreme Court and from this court, that the necessary and proper corpus permits the criminalization of activity that falls under the Commerce Clause. And I'm prepared to rest on the papers with respect to that argument, unless the court has questions. I'm hoping that you can respond to your colleague's argument that Harris, Ramos, Holston don't explicitly or implicitly address the issue of congressional authority to enact 22-52A under the Commerce Clause. Well, particularly with respect to Harris, the court determined a facial challenge and an as-applied challenge to the criminal prosecution statute. And because it was a facial challenge, I think that that is an express determination that the criminal penalty is authorized by the Commerce Clause. As well, as Your Honors know, there are a multitude of criminal statutes that are authorized in the same way. Thank you, Your Honor. With respect to the sentencing, I know that the sentence that was imposed was well below the guideline range. And I would ask the court to consider the fact that this is a defendant who was convicted after trial and therefore received no reduction for acceptance of responsibility. And that's one factor that might distinguish this sentence from other like defendants. And I'm prepared to rest on my papers, unless the court has any other questions, Your Honor. Since you raised acceptance, I mean, it's not common, but it's not unheard of for a defendant who goes to trial to receive credit for acceptance, particularly where the challenge at trial is at least in part anchored in a legal objection, which Mr. Elledge clearly is pursuing here. I guess I'm not entirely sure why we're focused on that, because I think the only argument made here, and I'm going to return to this when we get to rebuttal by your fellow counsel, but is substantive reasonableness. There's not a claim raised here, right, that the denial of acceptance credit was wrong, right? The only claim that I saw on appeal as to the sentence is substantive unreasonableness. Is that right? That is correct, Your Honor. All right. Thank you. I think we're good. Thank you. Thank you, Your Honors. Ms. Shevitz, you've got your rebuttal time. And Ms. Shevitz, if you can give us some attention on that question of substantive reasonableness, I think at least for me that would be helpful. Yes. The sentencing claim is that the guidelines themselves are unreasonable because they're not empirically based. These guidelines, the child pornography guidelines. And because they're not empirically based and because even the Sentencing Commission has said that the guidelines are not empirically based and not right, it's appellant's view that those guidelines should not be a proper starting point for any sentence. That's his position on sentencing. So again, that would maybe as for preservation purposes, of course, we have clear binding law that requires district judges to begin with the proper calculation of the sentencing guidelines. And then they're not binding as clear here where the defendant received a substantially below guideline sentence. I agree. And it is a matter of preservation because counsel believes that the guidelines produce overly long sentences and that all sentences are too long in today's world. But back to the issue of Harris and the other cases, there is no case that actually deals with whether the Congress clause provides for a criminal prosecution when one considers the source of the criminal prosecution entirely, which is that there are limited problems. It's appellant's view that the necessary and proper clause does not mean that anything goes. And that's what's happening in this area. Can I ask, just to understand with some precision the argument, is your argument that Congress doesn't have the power to pass legislation that criminalizes and allows for criminal punishment of non-enumerated crimes? Or is it that the executive does not have the power under the Constitution to prosecute and enforce any such laws passed by Congress? That's a good question. And I think Helen hasn't really thought of which one doesn't have the power. His view is that nobody has the power to put him in jail for something that is really a state offense, as are most offenses, except in these limited areas that are limited in the Constitution. So, no, he believes that neither the executive can throw him in jail, nor Congress can provide for criminal penalties for that type of offense. Counsel, I have a follow-up question about the sentence question. Again, I want to be clear, there is no challenge here beyond substantive reasonableness. So I'm looking at the conditions of supervised release, and I want to make sure I haven't missed it, that you are not challenging special conditions prohibiting any, quote, direct contact with a minor, not just unsupervised contact. You are not challenging a polygraph condition. You are not challenging a complete bar on adult pornography. None of that is being challenged here. Is that right? He has not challenged those conditions, no. And you are not his counsel. You are counsel, right? You're not standby counsel here. No, I'm counsel. All right. I am counsel. Thank you. But now that you're mentioning that, maybe I should challenge that. Well, it's a little late for that. No such objection was raised at sentence. You're right. You're right. And just to put a – I'm looking at your question presented. It may be that your client has – would also love concerns about the executive being able to prosecute it, but it's whether the Congress has no authority to punish under the Congress clause, right? So right now, the only thing before us is a congressional authority challenge. Is that right? That is true. Okay. That's true. Okay. That's true. If there's no other questions – I think we're all set. I will – Thank you so much. We will take the case under advisement. Thank you very much.